# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | Criminal No.  1:10-CR-00334 |
| v. | : | |
| | : | (Judge Rambo) |
| **MICHAEL WAYNE COOK**, | : | |
| | : | |
| Defendant. | : | |

## <u>GOVERNMENT'S TRIAL BRIEF</u>

COMES NOW the United States and, in preparation for the jury trial

scheduled in this case for Wednesday, April 20, 2011, hereby submits the instant

Trial Brief for the Court's convenience:

## I.      Charge and Maximum Penalties

On November 17, 2010, the defendant was charged in a single-count

indictment with illegal possession of body armor by a violent felon in violation of

18 U.S.C. § 931.  The maximum penalties are 3 years imprisonment, $250,000

fine, and a minimum term of supervised release of 1 year.

## II.     Factual Background

In December 2006, the FBI opened an investigation into Michael Wayne

Cook based on intelligence the bureau received indicating that Cook was

contemplating taking revenge for the 2004 arrest and conviction of Matthew Hale,

who at the time was a leader in the "Creativity Movement" white supremacist

organization of which Cook was a member.  In February 2007, James Lewis, a

prominent member of the KKK in Pennsylvania, approached the FBI stating that

he was renouncing his white supremacist views and claiming that he had

information regarding Cook and other members of the KKK.  The FBI enlisted

Lewis as a confidential source and gave him the code name Cyclops.

Over the course of the next year and a half, Lewis reported to the FBI on a

routine basis regarding Cook's activities and, on a number of occasions,

participated in consensual recordings of his conversations with Cook.  During

many of those conversations, Cook made statements regarding the use of violence

against the people responsible for the arrest and conviction of Matthew Hale and about racially motivated violence in general.  In connection with those statements, Cook discussed with Lewis the purchase of firearms, particularly AK-47 or AR-15 assault rifles for Cook and other members of the militant wing of the Creativity Movement.

Specifically, the United States has consensual recordings of Cook regarding the following:

1.     On February 5, 2007, Cook and Cyclops discuss the purchase of a gun from a firearms dealer known to Cyclops;

2.     On February 5, 2007, Cook discusses his plan to start an underground militant wing of the Creativity Movement, to recruit veterans of the military for that group, and to take revenge on the persons responsible for the imprisonment of Matthew Hale, including Director of Homeland Security Michael Chertoff and United States District Judge James T. Moody, who sentenced Hale to 40 years' imprisonment for soliciting an FBI informant to murder United States District Judge Joan Lefkow, who had previously ruled against Hale's group in a copyright infringement case;

3.     On March 2, 2007, Cook and Cyclops discuss their plans to attend the Harrisburg Gun Show on March 18, 2007, wherein Cook asks Cyclops to purchase

a gun that Cook will keep in a storage facility, and tells Cyclops that guns are good to have, but that they don't need real ones "right now";

5.     On March 18, 2007, Cyclops wears a recording device to the Harrisburg Gun show during which the recorder picks up some audio of Cook purchasing a bullet proof vest; on the ride home, Cook is speaking with another individual on the phone in the presence of Cyclops when Cook tells the other person that he just purchased a bullet proof vest, that the faction of the KKK of which he is a member is a "militant Klan" and that he planned to purchase a number of "air soft" guns to train with because they are cheaper than training with real guns;

6.     On March 30, 2007, while discussing his plan to post pictures on the internet of himself and Cyclops wearing military gear and black ski masks, Cook states that he wants his organization to be underground and anonymous because he wants people to know who he is "from the sting of [his] bullets", but when Cyclops says, "You mean your plastic [air soft] bullets?", Cook replies, "for now," and states that he can get a real gun whenever he wants to;

7.     On October 21, 2007, Cook and Cyclops discuss the purchase of another bullet proof vest from an upcoming gun show and Cook states his intent to have a militant wing of his white supremacist organization;

4

8.     On December 5, 2007, Cook tells Cyclops about his plan to post pictures on the internet of members of his organization wearing military uniforms and brandishing fake weapons, talks about how other members of his group are no longer militant enough, expresses his desire to obtain another bullet proof vest at the upcoming gun show, and states that the white race needs to win the upcoming racial holy war;

9.     On December 9, 2007, Cook is recorded at the Harrisburg Gun Show talking with a vendor about a newer bullet proof vest with ceramic plates;

10.     On March 2, 2008, Cook states to Cyclops that it's a good thing to be armed and to have military training and be ready in case of ethnic conflict and says that he intends to continue training with air soft weapons but will have the real thing at his house or in the trunk of his car in case he needs it.

Based on Cook's conversations with Cyclops in which he talks with Cyclops about purchasing a gun, the FBI directed Cyclops to wear a recording device and accompany Cook to the Harrisburg Gun Show on March 18, 2007. The show was also surveilled by FBI agents who planned to arrest Cook if he followed through with the purchase.  Although Cook did not purchase a firearm at the show, he did buy a bullet proof vest.  The vendor who sold him the vest will testify that the vest was purchased at a gun show in Maryland and that the vest has

5

ballistic qualities such that it falls under the statutory definition of "body armor."

On the ride home from the gun show, the recording device picked up a phone conversation between Cook and another person wherein Cook tells the person that he "just bought a bullet proof vest." Cyclops viewed the vest in Cook's apartment after the purchase, but according to Cook, he sold the vest later that summer. However, during an interview with FBI agents in 2009, Cook admitted that he had owned several bullet proof vests, including the one he purchased at the Harrisburg Gun Show in March 2007.

### III.   Witnesses and Anticipated Testimony

1.      Trooper Hugh Earhart of the PSP/FBI Joint Terrorism Task Force will testify regarding the background of the investigation, the running of the CS, the surveillance of Cook by FBI agents at the gun show, and the subsequent interview of Cook wherein Cook admitted to owning several vests, including the ballistic vest purchased at the gun show.

2.      Special Agent Heather Thew of the FBI will testify to her observation of Cook's purchase of the vest at the gun show.

3.      James Lewis (Cyclops) will testify to his previous relationship with Cook, his role as a CS for the FBI, Cook's intent to make an illegal purchase at the gun show, his role as a CS at the gun show wherein he was equipped with a recording device and observed Cook purchase the vest then state to an individual

6

on the phone on the ride home that he just bought a bullet proof vest.

4.      Terry Daley, the vendor who sold Cook the vest, will testify that Cook purchased the vest, that the vest had ballistic qualities, and that the vest was originally purchased at a gun show in Maryland.

5.      Trent Daley, the son of Terry Daley, will also testify that he remembered Cook purchasing the vest, that the vest had ballistic qualities, and that the vest was originally purchased at a gun show in Maryland.

**IV.    Exhibits**

The United States anticipates using the following exhibits in its case-in-chief at trial:

1.      Audio clip of the gun show when Cook first viewed the vest.

2.      Audio clip of the gun show when Cook purchased the vest.

3.      Audio clip of the ride home from the gun show when Cook told someone over the phone that he just bought a bulletproof vest.

4.      A flak jacket to be used as a demonstrative aid and not as evidence.

5.      A ballistic vest to be used as a demonstrative aid and not as evidence.

The United States has marked as exhibits a number of additional audio clips and digital photographs that may be introduced on rebuttal if necessary.

**V.     Stipulations**

The parties have reached the following stipulation in this matter:

The Defendant was convicted of a felony that is an offense under State law that would constitute a crime of violence as defined in 18 U.S.C. § 16 if it occurred within the special maritime and territorial jurisdiction of the United States. This felony conviction occurred prior to the time Defendant is alleged to have possessed the body armor as charged in the Indictment. The Defendant is therefore prohibited under 18 U.S.C. § 931 from knowingly purchasing, owning, or possessing body armor as that term is defined in 18 U.S.C. § 921(a)(35).

## VI.    Potential Issues at Trial

Through the Court's rulings on the parties' motions in limine, the parties are precluded from introducing evidence regarding Defendant's restoration of rights form and the United States has agreed not to introduce evidence of Defendant's involvement with white supremacist organizations in its case-in-chief. The United States does not intend to offer any evidence regarding Defendant's use of air soft weapons, his discussions of military training, his statements regarding the purchase of a firearm, or any similar information in its case-in-chief, and intends to confine its presentation of the evidence solely to Defendant's actions in connection with the vest he purchased on March 18, 2007.

Based on discussions between the parties in preparation for trial, the United States anticipates that Defendant may attempt to argue that Defendant possessed the body armor in connection with his use of the air soft guns or that he was

merely a collector of "militaria" and therefore did not intend to use the body armor for an illicit purpose.  The United States contends that this evidence is irrelevant because it does not tend to prove or disprove any of the elements of the crime.  If Defendant is somehow permitted to introduce this evidence or fashion an argument regarding the purpose for which Defendant possessed the vest, the United States requests permission to rebut that evidence or argument. Specifically, based on the United States' investigation and Defendant's own statements in the consensual recordings as set forth above, Defendant's use of the air soft guns was expressly to train for racially motivated violence.  By Defendant's own admission, then, he was not simply interested in air soft guns or in "militaria", but rather he was purchasing and collecting these items with the intent to engage in future violence in connection with his militant white supremacist beliefs.

The United States also anticipates that Defendant may attempt to argue that the delay in arresting or charging him or the fact that Defendant had sold the vest in 2007 provides an independent basis on which to acquit him. The Court should not permit Defendant to jump to this conclusion of "no harm, no foul." Such an argument is improper because it would encourage the jury to decide the case on something other than the facts and the law.

Respectfully submitted,

PETER J. SMITH
United States Attorney

Dated:  April 19, 2011

s/ Wesley P. Page
WESLEY P. PAGE
Assistant United States Attorney
Wesley.Page@usdoj.gov
WV10529
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, Pennsylvania 17108
Telephone: (717) 221-4482
Facsimile: (717) 221-2246

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | Criminal No.  1:10-CR-00334 |
| v. | : | |
| | : | (Judge Rambo) |
| **MICHAEL WAYNE COOK**, | : | |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 19th day of April 2011, she served a copy of the attached

## GOVERNMENT'S TRIAL BRIEF

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania and/or by electronic means by sending a copy to the e-mail addresses stated below:.

ADDRESSEE(S):
Thomas Thornton, Esquire
Federal Public Defender's Office
Email: Thomas_Thornton@fd.org

/s/ CYNTHIA A. ZIMMERMAN
CYNTHIA A. ZIMMERMAN
Legal Assistant